JACKSON ET AL., APPELLANTS, *v.* CITY OF WOOSTER BOARD OF EDUCATION ET AL., APPELLEES.

(No. 2086 — Decided November 20, 1985.)

*Edward L. Gilbert,* for appellants.
*John C. Burkholder,* for appellees.

MAHONEY, P.J. Appellants Walter, Constance, and Erik Jackson appeal the judgment after a bench trial of the Wayne County Court of Common Pleas in favor of appellees, city of Wooster Board of Education (the "board") and William McConnell. We affirm.

On April 3, 1984, Erik Jackson, the son of Walter and Constance Jackson, was an eighth grade pupil enrolled at Edgewood Junior High School in Wooster, Ohio. That afternoon, he attended his regular physical education class which was taught by William McConnell. Up until that time, McConnell and Erik had had a good teacher-student relationship without any disciplinary clashes. McConnell had a well known and recognized rule that after showering at the end of class, each student was allowed only one towel. This was due to short supply. On this day, McConnell gave Erik a towel when he came out of the shower. McConnell, who had to supervise the entire class of twenty-five boys in the locker room, was attending to another student with his back to Erik when he turned around and saw Erik take a second towel. McConnell reminded Erik of the one-towel rule and told him to put the towel back. Erik's response to this demand was a burst of laughter and non-compliance with Mc-Connell's request. McConnell then ordered Erik to do twenty-five push-ups, his standard punishment for comparable behavior.[1] Erik, who was still naked,

---

[1] McConnell testified that the one-towel rule had only been violated twice before and on those occasions the students apologized and returned the towels and were orally reprimanded. He testified that he normally assigns twenty-five push-ups as punishment for defiant students.

asked if he could go to his locker and put on his shorts before doing the push-ups. McConnell responded by saying "just do the push-ups" and went on supervising the other boys.

Erik then began doing his push-ups in a dry area of the locker room next to the towel hamper. McConnell watched Erik do some of the push-ups, but had to watch the other students and did not see Erik do all twenty-five. While Erik was doing his push-ups, someone told him to make sure his penis touched the floor. Erik, whose face was towards the floor and could not see the speaker, claims that McConnell made the statement. McConnell denies having said it and a student who witnessed the event later testified at trial that one of the other students said it. After finishing his push-ups, Erik got dressed and went on with the rest of his school day.

When he got home that night, Erik told his mother about what happened that day. His mother then made complaints to various school officials and, along with her husband, filed a complaint against the board and McConnell on April 26, 1984. The complaint demanded damages in the alternative for negligent or intentional infliction of emotional distress to Erik. After filing the suit, Erik went to a psychiatrist, Dr. Lesowitz, in May 1984, complaining of depression. Dr. Lesowitz suggested that Erik return for a second meeting in June and begin attending regular weekly therapy sessions. Erik never returned to see Dr. Lesowitz and did not start therapy until after depositions were taken in late September 1984. Since the towel incident, Erik has continued to participate in physical education classes as well as extracurricular football and wrestling. One of his later physical education teachers testified at trial that Erik has not displayed any reluctance to participate in class or take a shower after class.

Erik received one prescription for a month's supply of an antidepression drug, but the record does not indicate that he ever requested or received a refill. Although he alleges that he has had sleeping problems since the towel incident, Erik did not begin taking sleeping pills until the eve of trial in February 1985. Likewise, while the Jacksons claim that Erik has suffered a weight loss due to McConnell's actions, the record indicates that he in fact has gained weight since the incident and had a healthy appetite on the day of the trial.

A bench trial was held on February 28, 1985, after which the trial court found that McConnell had not acted outrageously, had not intended to emotionally injure Erik, and did not cause any serious emotional distress to Erik. The trial court ruled in the defendants' favor and dismissed the Jacksons' complaint with prejudice.

## Assignment of Error I

"The trial court erred in denying appellants recovery for the intentional infliction of emotional distress perpetrated by appellee-McConnell."

Damages are now recoverable in this state for the intentional infliction of emotional distress even in the absence of a contemporaneous physical injury. *Yeager* v. *Local Union 20* (1983), 6 Ohio St. 3d 369. In order to recover in such an action, the Jacksons must prove four elements:

"* * * 1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go 'beyond all possible bounds of decency' and was such that it can be considered as 'utterly intolerable in a civilized community,' * * *; 3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and

4) that the mental anguish suffered by plaintiff is serious and of a nature that 'no reasonable man could be expected to endure it'* * *." *Pyle* v. *Pyle* (1983), 11 Ohio App. 3d 31, 34.

In finding for the board and McConnell, the lower court expressly found that the Jacksons had not proven the first, second and fourth of these elements. After reading the record before the trial court, we find sufficient evidence to support its findings and therefore must affirm them. See *C. E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261].

The record before the trial court contains little if any evidence to indicate that McConnell's objective was to emotionally injure Erik, but instead indicates that his only intent was to ensure discipline through quick and certain punishment. Likewise, there is no indication that McConnell knew or should have known that his act could result in any such injury.

We also find the court's conclusion that McConnell's act was not "extreme and outrageous" to be sufficiently supported by the record. The trial court expressly found that McConnell did no more than tell Erik to do the push-ups and refused to let him go dress first; he did not tell Erik to let his penis touch the floor. This finding is well supported by the testimony of both McConnell and the student eyewitness. *C. E. Morris Co., supra.* Such an act, in the context of the semi-organized chaos of a high school's boys' locker room filled with youths in various stages of dress and undress hardly descends to the level of conduct which is utterly intolerable in a civilized community. In the face of the possibility that Erik would not return to do the push-ups, but would instead beat a hasty retreat through the bustle of the locker room,[2] denying his request to dress first is likewise not outrageous.

Finally, turning to the severity of the emotional distress inflicted upon Erik, the trial court found that this was a case of hurt feelings and that Erik did not suffer emotional distress of the kind necessary to allow recovery. In order to recover for intentional infliction of emotional distress, Erik must have suffered severe emotional distress and not just embarrassment or hurt feelings. *Yeager, supra; Reamsnyder* v. *Jaskolski* (1984), 10 Ohio St. 3d 150. Given the testimony of Erik's later gym teacher, the student eyewitness, and Erik himself regarding his continued ability to participate in school and extracurricular activities, the trial court's finding that his injury, if any, simply amounts to hurt feelings is consistent with the evidence presented.

### Assignment of Error II

"The trial court erred in denying appellants recovery for the negligent infliction of emotional distress perpetrated by appellee-McConnell."

While Ohio also recognizes the tort of negligent infliction of emotional distress, recovery under the theory is likewise dependent upon a finding that Erik suffered emotional distress which is both severe and debilitating. *Paugh* v. *Hanks* (1983), 6 Ohio St. 3d 72, 79. Because of the Jacksons' failure to establish such an injury, the trial court's denial of recovery under this theory must also be upheld.

### Assignment of Error III

"The trial court erred in deciding

---

[2] In arguing that it is foolish to think that Erik would try to leave because he would only be punished later, the Jacksons' counsel has forgotten the nature of high school where, like many places, postponement of punishment is often, if not always, considered a benefit.

for appellees against the manifest weight of the evidence."

As our treatment of the first two assignments of error shows, the trial court's judgment is not against the weight of the evidence.

Appellants' assignments of error are overruled. The judgment is affirmed.

*Judgment affirmed.*

QUILLIN and BAIRD, JJ., concur.