UEBELACKER, APPELLANT AND CROSS-APPELLEE, *v.* CINCOM SYSTEMS, INC., APPELLEE; VEITH, APPELLEE AND CROSS-APPELLANT.

(No. C-870720 — Decided December 28, 1988.)

*Tobias & Kraus, David G. Torchia* and *Paul H. Tobias,* for appellant and cross-appellee.

*Dinsmore & Shohl, Gerald V.*

*Weigle, Jr.* and *Jerry S. Sallee,* for appellee Cincom Systems, Inc.

*White, Getgey & Meyer Co., L.P.A.,* and *Ronald A. Meyer,* for appellee and cross-appellant Frank Veith.

*Per Curiam.* Plaintiff-appellant and cross-appellee Carl O. Uebelacker has taken the instant appeal from the entry of summary judgment in favor of defendant-appellee Cincom Systems, Inc. ("Cincom") and defendant-appellee and cross-appellant Frank Veith on Uebelacker's complaint seeking damages for the events surrounding the termination of his employment with Cincom. Veith has also appealed in this matter and, on appeal, challenges the entry of summary judgment for Uebelacker on Veith's counterclaim for malicious prosecution.

Cincom employed Uebelacker as a sales representative in July 1982. In connection with his employment, Uebelacker executed a document entitled "Employment Agreement," and Cincom supplied him with an "Employee Benefit Book," which outlined Cincom's employee policies and procedures.

Throughout his tenure at Cincom, Uebelacker worked under the direct supervision of Veith. In the latter months of 1983, the professional and personal relationship between Uebelacker and Veith began to show signs of deterioration. On July 27, 1984, Uebelacker met with Veith's superior, Stan Sewall, to air his grievances against Veith and to discuss the advisability of a transfer to another division within the company or a change in employment. Sewall allegedly minimized the problem and agreed to speak with Veith. Sewall subsequently met with Veith, and on August 10, Veith and Uebelacker met.

Uebelacker left his August 10 meeting with Veith with the impression that their major differences had been resolved. However, on August 27, 1984, Veith prepared and submitted to Uebelacker a "First Warning of Dismissal." The warning outlined Veith's complaints with Uebelacker's performance, including missed sales quotas, tardiness, nonbusiness-related conversations during business hours, and the use of company resources for personal business, and mandated improvement in those areas by October 1, 1984. On September 4, Uebelacker responded to Veith's warning in a memorandum disputing Veith's contentions and defending his performance.

On September 19, Uebelacker again met with Sewall. Sewall allegedly expressed satisfaction with Uebelacker's work and told Uebelacker that his division had never fired or laid off anyone and that he need not worry about the warning of dismissal. However, Veith's warning of dismissal was not withdrawn, and in November 1984, Sewall, upon Veith's recommendation, decided to discharge Uebelacker.

On November 29, at approximately 3:00 p.m., Veith arrived at Uebelacker's cubicle, accompanied by Cincom employees Dennis Butler and Steve Ream, bearing empty boxes for Uebelacker's personal belongings. The events that then transpired are in dispute. Uebelacker asserts that Veith advised him of his termination and demanded that he gather his personal items and leave the building under escort, and that when he declined to accede to Veith's demands and asked to speak first with someone from the personnel office, Veith became incensed. Uebelacker contends that Veith prevented him from contacting the personnel office by telephone by grabbing his wrist and his arm, and that Butler prevented him from leav-

ing the cubicle by blocking him with his body. Veith denies any physical contact between Uebelacker and him or any other Cincom employee. He asserts that Butler and Ream were present to assist Uebelacker with his boxes, and that Uebelacker was escorted from the building for fear that he would become disruptive or would leave with company property.

On December 19, 1984, Uebelacker instigated criminal proceedings against Veith through a private complaint program, charging Veith with unlawful restraint. The charge was tried to the court and was dismissed at the close of the prosecution's case upon the trial court's determination that Veith's restraint of Uebelacker was privileged.

On November 27, 1985, Uebelacker filed the complaint underlying the instant appeal, seeking damages against Cincom and Veith for false imprisonment, assault and battery, defamation, breach of express and implied contract, wrongful termination, and intentional infliction of emotional distress. Cincom responded with an answer, substantially denying the allegations of Uebelacker's complaint, and Veith responded with an answer and a counterclaim for malicious prosecution. On January 15, 1987, Cincom and Veith filed a joint motion for summary judgment on Uebelacker's complaint, and Uebelacker moved for summary judgment on Veith's counterclaim. Upon consideration of the pleadings, the motions and the supporting evidentiary material, the trial court granted summary judgment for Cincom and Veith on all claims advanced by Uebelacker and for Uebelacker on Veith's counterclaim. From that judgment, Uebelacker and Veith have each appealed, and on appeal, each advances a single assignment of error.

The standard governing the dispo-

sition of the parties' cross-motions for summary judgment is set forth in Civ. R. 56. Pursuant thereto, a party against whom a claim is asserted may move, either with or without supporting affidavits, for summary judgment in his favor on all or any part of the claim. Civ. R. 56(B). A motion for summary judgment may be granted if the court, upon viewing the inferences to be drawn from the underlying facts set forth in the pleading, depositions, answers to interrogatories, written admissions, and affidavits in a light most favorable to the party opposing the motion, determines that (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party opposing the motion. *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 327, 4 O.O. 3d 466, 472, 364 N.E. 2d 267, 274; Civ. R. 56(C).

I

Uebelacker, in his sole assignment of error, challenges the trial court's entry of summary judgment for Cincom and Veith on all claims advanced in his complaint. He contends that issues of fact remain as to whether an obligation to discharge only for just cause arose from Cincom's policies and practices or under the doctrine of promissory estoppel, whether he was unlawfully detained, and whether the conduct of Cincom and Veith in discharging him was extreme and outrageous and caused him to suffer serious emotional distress. He further asserts that the defendants, through their pleadings, motion and supporting evidentiary material, failed to establish the absence of factual issues on his claims for defamation and assault and battery. We find this challenge to be well-taken in part.

## A

We address initially Uebelacker's contention that issues of fact remain as to whether an obligation on the part of Cincom to discharge only for just cause arose from Cincom's policies and practices or under the doctrine of promissory estoppel.

As we noted *supra,* Uebelacker, at the inception of his employment with Cincom, executed a document entitled "Employment Agreement." The agreement was for an indefinite term. As a general rule, an employment agreement of indefinite duration is terminable at the will of either party to the agreement, unless the parties provide otherwise. *Henkel* v. *Educational Research Council of America* (1976), 45 Ohio St. 2d 249, 74 O.O. 2d 415, 344 N.E. 2d 118; *Hedrick* v. *Center for Comprehensive Alcoholism Treatment* (1982), 7 Ohio App. 3d 211, 7 OBR 272, 454 N.E. 2d 1343. The at-will nature of Uebelacker's employment was reinforced by the agreement's provision that "[e]ither party may terminate employment for any reason upon two weeks (14 days) written notice to the other party."

Uebelacker insists, however, that the document that he executed upon employment was not an employment agreement but a nondisclosure/non-competition agreement. We are unpersuaded.

The interpretation of a written agreement is, in the first instance, a matter of law for the court. *Alexander* v. *Buckeye Pipe Line Co.* (1978), 53 Ohio St. 2d 241, 7 O.O. 3d 403, 374 N.E. 2d 146. If a contract is clear and unambiguous, the court need not go beyond the plain language of the agreement to determine the parties' rights and obligations; instead, the court must give effect to the agreement's express terms. *Seringetti Constr. Co.* v. *Cincinnati* (1981), 51 Ohio App. 3d 1, ____ N.E. 2d ____. The subject agreement is designated as an "employment agreement" and contains provisions other than those restricting Uebelacker's disclosure of company secrets or his ability to compete against the company, *viz.,* the provision for termination by either party for any reason upon two weeks' notice. The agreement also contains a merger clause that provides that the "agreement constitutes the entire Agreement between the parties, all previous discussions, promises, representations and understandings, if any, being merged herein." Finally, the agreement sets forth the following admonition: *"WARNING — READ CAREFULLY — THIS AGREEMENT AFFECTS THE CONDITIONS OF YOUR EMPLOYMENT."*

We find that the language of the agreement is clear and unambiguous, that the agreement governed the terms and conditions of Uebelacker's employment, and that, pursuant to the agreement, Uebelacker's employment with Cincom was terminable at the will of either party upon two weeks' notice.

Ohio courts have recognized two exceptions to the employment-at-will doctrine. Employee handbooks, company policy and oral representations may give rise to implied or express contractual provisions that alter the terms of an oral at-will employment relationship. *Mers* v. *Dispatch Printing Co.* (1985), 19 Ohio St. 3d 100, 104, 19 OBR 261, 264, 483 N.E. 2d 150, 154. An employer's right to discharge an employee may also be limited by representations or promises made to the employee which fall within the doctrine of promissory estoppel. *Id.* Uebelacker, in his complaint, advanced claims under both exceptions.

## 1

Uebelacker contended in Count IV

of his complaint that the terms and conditions of his employment were governed by custom, course of dealing, past practice, company policy, oral representations and the Cincom Employee Benefit Book ("benefit book"). He asserted that he was thereby entitled to rights and protections, including the right to be terminated only for just cause, and that Cincom, in discharging him, violated provisions of its benefit book and its established customs, practices and policies.

In his complaint and in the evidentiary material submitted, Uebelacker failed to specify the oral representations (other than those which form the basis for his promissory estoppel claim) or company policy (other than that set forth in the benefit book) which might give rise to express or implied contractual terms altering the at-will nature of his employment. He does, however, cite specific sections of the benefit book that allegedly entitle him to the protections enumerated in Count IV of his complaint, including the right to be discharged only for just cause.

We note at the outset that the Ohio Supreme Court in *Mers, supra,* recognized the employee-handbook exception to the at-will doctrine only to alter the terms of an *oral* at-will employment relationship. The at-will nature of Uebelacker's employment relationship with Cincom arose by virtue of the indefinite duration of his employment and was reinforced by the provision in his written employment agreement for termination of employment by either party for any reason upon two weeks' notice.

In addition, the provisions of an employee handbook will alter the terms of an at-will employment relationship only if the employer and the employee have agreed to create a contract from the writing. In the absence of mutual assent, a handbook is simply a unilateral statement of rules and policies that create no obligation or rights. *Tohline* v. *Central Trust Co.* (1988), 48 Ohio App. 3d 280, 549 N.E. 2d 1223.

The benefit book upon which Uebelacker relies provides: "THE POLICIES DESCRIBED HERE ARE NOT CONDITIONS OF EMPLOYMENT, AND THE LANGUAGE IS NOT INTENDED TO CREATE A CONTRACT BETWEEN CINCOM SYSTEMS, INC. AND ITS EMPLOYEES." This disclaimer clearly manifests Cincom's intent not to be contractually bound by the policy statements and procedures contained in its benefit book. We, therefore, conclude that no issues of fact remain as to whether an express or implied obligation to discharge only for just cause arose under the policies and procedures set forth in Cincom's benefit book, and that the defendants were entitled to summary judgment in their favor on this claim as presented in Count IV of Uebelacker's complaint.

2

In Count V of his complaint, Uebelacker invoked the doctrine of promissory estoppel, seeking enforcement of Sewall's verbal assurances of job security and of Cincom's written policies, customs and practices. Uebelacker asserted that Sewall reasonably should have expected the assurances of job security to induce his forbearance from seeking a transfer within the company or employment elsewhere, that he relied to his detriment on Sewall's assurances, and that injustice could be avoided only by enforcement of Sewall's assurances. He further alleged that Cincom's policies, practices and customs were designed to induce employees to believe that they could be discharged only for just cause, that he relied on those policies,

practices and customs to his detriment, and that injustice could be avoided only by their enforcement.

Under the doctrine of promissory estoppel, " '[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee * * * and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. * * *' " *Mers, supra,* at 104, 19 OBR at 265, 483 N.E. 2d at 154 (quoting 1 Restatement of the Law 2d, Contracts [1981] 242, Section 90); see, also, *Hedrick, supra; Kidd* v. *Ral Partha Ent., Inc.* (Mar. 6, 1985), Hamilton App. No. C-840268, unreported. The doctrine of promissory estoppel aids the enforcement of promises by supplying the element of consideration when necessary to prevent injustice. *Kidd, supra; Blackwell* v. *Internatl. Union U.A.W.* (1983), 9 Ohio App. 3d 179, 9 OBR 289, 458 N.E. 2d 1272. The import of the promise, *i.e.,* what action or forbearance the promisor reasonably should have expected of the promisee, and whether the action or forbearance flowing from the promise was reasonable are generally questions of fact for the jury. *Mers, supra,* at 105, 19 OBR at 265, 483 N.E. 2d at 155.

Uebelacker's contention that Cincom was estopped by Sewall's verbal assurances of job security from discharging him for other than just cause is supported by his deposition. He therein asserted that at his meeting with Sewall, following receipt of Veith's warning of dismissal and after he had conveyed to Sewall his desire to transfer within the company or to find employment elsewhere, Sewall expressed satisfaction with his performance and assured him that the division had never fired anyone and that he need not worry about Veith's warning. The introduction of this evidence in support of Uebelacker's claim is not barred by the parol evidence rule. Compare *Plazzo* v. *Nationwide Ins. Co.* (Nov. 5, 1986), Summit App. No. 12528, unreported. The rule prohibits the introduction of evidence of a prior or contemporaneous oral statement to vary the terms of a written agreement; however, it has no application to evidence regarding a subsequent oral modification of a written agreement or to the waiver of contractual terms by language or conduct. *Norris* v. *Royal Indemn. Co.* (1984), 20 Ohio App. 3d 206, 20 OBR 252, 485 N.E. 2d 754.

Viewing the inferences to be drawn from the facts set forth in the pleadings and supporting evidentiary material in a light most favorable to Uebelacker, we find that issues of fact remain as to whether Sewall reasonably should have expected his assurances of job security to induce Uebelacker's forbearance from seeking a transfer within the company or employment elsewhere and whether Uebelacker's reliance was reasonable. We, therefore, conclude that the trial court improvidently granted summary judgment for the defendants on Uebelacker's claim in Count V of his complaint, seeking enforcement under the doctrine of promissory estoppel of Sewall's verbal assurances of job security.

We further find, however, that Uebelacker's reliance on the Cincom benefit book to estop Cincom from discharging him for other than just cause is misplaced. The benefit book must be construed in its entirety; Uebelacker cannot rely on selected passages favorable to his position and ignore those that are unfavorable. See *Tohline, supra.* Cincom's benefit book bears a disclaimer which provides that "[t]he policies described * * * are not conditions of employment" and contains a form employment agreement identical to that executed by Uebe-

lacker. The form agreement includes the provision for termination of employment by either party for any reason upon two weeks' notice, the merger clause, and the admonition to the employee to read the agreement carefully because it affects the conditions of employment.

Viewing the benefit book in its entirety, we find that no issues of fact remain as to whether it was designed to induce employees to believe that they could be discharged only for just cause or that Cincom, in issuing the handbook, reasonably should have expected its employees to act in reliance on such a belief. We, therefore, conclude that summary judgment was properly entered in favor of the defendants on Uebelacker's claim in Count V seeking enforcement under the doctrine of promissory estoppel of provisions of Cincom's benefit book.

### 3

In Count VI of his complaint, Uebelacker urged the adoption of a third exception to the at-will employment doctrine. He alleged that he was discharged, in part, for complaints to Veith about the legality of a Cincom agency agreement co-authored by Veith and that his discharge on this basis undermined Ohio's public policy, which forbids the formation of illegal and legally insufficient contracts. In *Phung* v. *Waste Management, Inc.* (1986), 23 Ohio St. 3d 100, 23 OBR 260, 491 N.E. 2d 1114, the Ohio Supreme Court rejected this public policy exception to the at-will doctrine. The court found that the Ohio Constitution delegates to the legislature primary responsibility for protecting the welfare of employees and held that an at-will employee who is discharged for reporting to his employer that it is conducting its business in violation of law does not have a cause of action against his employer for wrongful discharge.

We, therefore, conclude that summary judgment was properly entered for the defendants on the claim for relief advanced in Count VI of Uebelacker's complaint.

### B

We turn next to Uebelacker's contention that the trial court erred in granting summary judgment for defendants on his claim for false imprisonment. This contention is well-taken.

As we noted *supra,* shortly after his discharge from Cincom, Uebelacker instigated criminal proceedings against Veith for unlawful restraint. The proceedings ended in Veith's acquittal on the charge upon the trial court's determination that his conduct was privileged. In their motion for summary judgment, the defendants contended that Uebelacker's civil claim for false imprisonment was barred under the doctrine of *res judicata* by Veith's acquittal on the criminal charge of unlawful restraint. We disagree.

The parties, rules of decision, rules of procedure, and objectives in a criminal proceeding differ from those in a civil proceeding. Therefore, an acquittal on a criminal charge is not a bar to a subsequent civil action if the objective of the civil action is compensation, not punishment. A subsequent civil proceeding will be regarded as a second prosecution, and thus barred by a prior criminal action, only when the subsequent action, although civil in form, is quasi-criminal in nature, *i.e.,* when the central objective of the subsequent action is punishment. *Helvering* v. *Mitchell* (1938), 303 U.S. 391; *United States* v. *Glidden Co.* (C.A. 6, 1941), 119 F. 2d 235, certiorari denied (1941), 314 U.S. 678. Uebelacker, in his complaint, sought compensatory damages against Cincom and Veith for false imprisonment.

Consequently, Veith's acquittal on the criminal charge of unlawful restraint does not bar Uebelacker's civil claim.

The tort of false imprisonment arises when one is confined intentionally, for any appreciable time, against his will and without lawful justification. *Feliciano* v. *Kreiger* (1977), 50 Ohio St. 2d 69, 4 O.O. 3d 158, 362 N.E. 2d 646; *Mullins* v. *Rinks, Inc.* (1971), 27 Ohio App. 2d 45, 56 O.O. 2d 218, 272 N.E. 2d 152. In an action for false imprisonment, the plaintiff need only demonstrate that he was deprived of his liberty. The presumption then arises that the restraint was unlawful, and it is incumbent on the defendant to show legal justification. *Isaiah* v. *Great Atlantic & Pacific Tea Co.* (1959), 111 Ohio App. 537, 15 O.O. 2d 291, 174 N.E. 2d 128. The determination of whether the plaintiff was falsely imprisoned presents a mixed question of law and fact: A legal question arises as to what facts state a claim for false imprisonment, and the question of whether those facts existed is for the trier of fact. *Bronaugh* v. *Harding Hosp., Inc.* (1967), 12 Ohio App. 2d 110, 41 O.O. 2d 185, 231 N.E. 2d 487.

Uebelacker alleged in Count I of his complaint that, in the course of the proceedings accompanying his termination, Veith and other Cincom employees physically and forcibly restrained and detained him in his cubicle and that his restraint and detention were against his will, unreasonable in duration and manner, and without probable cause or legitimate business justification. The allegations of the complaint were supported in Uebelacker's deposition. Veith in his deposition denied that Uebelacker was physically or forcibly restrained or detained and asserted that he had made it clear to Uebelacker that he "was free to leave at any time as long as he left the building under escort." We find that Uebelacker in Count I of his complaint fairly stated a claim for false imprisonment and that issues of fact remain as to whether Uebelacker was confined against his will and without or in excess of lawful justification. We, therefore, conclude that summary judgment was improvidently granted for the defendants on Count I of the complaint.

C

Uebelacker also challenges on appeal the trial court's entry of summary judgment for the defendants on his claim for intentional infliction of emotional distress. He asserts that issues of fact remain as to whether the conduct of Cincom and Veith in discharging him was extreme and outrageous and caused him to suffer serious emotional distress. We agree.

The Supreme Court of Ohio in *Yeager* v. *Local Union 20,* (1983), 6 Ohio St. 3d 369, 6 OBR 421, 453 N.E. 2d 666, recognized the tort of intentional infliction of emotional distress and adopted the standard set forth in 1 Restatement of the Law 2d, Torts (1965) 71, Section 46(1), which provides that:

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

To sustain a claim for the intentional infliction of emotional distress, a plaintiff must prove the following:

(1) That the defendant either intended to cause the plaintiff emotional distress or that he knew or should have known that his actions would cause the plaintiff emotional distress;

(2) That the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

intolerable in a civilized community," 1 Restatement of the Law 2d, Torts (1965) 73, Section 46, Comment *d; Yeager, supra,* at 375, 6 OBR at 426, 453 N.E. 2d at 671;

(3) That the defendant's conduct was the proximate cause of the plaintiff's psychic injury; and

(4) That the resultant emotional distress was serious, such that "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances * * *." *Paugh* v. *Hanks* (1983), 6 Ohio St. 3d 72, 6 OBR 114, 451 N.E. 2d 759, paragraph 3a of the syllabus. See, also, *Reamsnyder* v. *Jaskolski* (1984), 10 Ohio St. 3d 150, 10 OBR 485, 462 N.E. 2d 392; *Jackson* v. *Wooster Bd. of Edn.* (1985), 29 Ohio App. 3d 210, 29 OBR 254, 504 N.E. 2d 1144.

In Count VII of his complaint, Uebelacker alleged that the defendants' "wrongful discharge" and "intentional acts of harassment, wrongful detention, defamation, and assault and battery * * * constitute[d] extreme and outrageous conduct, beyond the bounds of decency" and that he resultantly suffered "mental anxiety, emotional distress, loss of self-esteem, depression, humiliation, damage to his reputation and the loss of the respect of family and friends." The defendants contend in support of the entry of summary judgment in their favor that Uebelacker failed to establish that any emotional distress that he might have suffered was serious.

In *Paugh* v. *Hanks, supra,* the Supreme Court of Ohio recognized an action for negligent infliction of serious emotional distress and established standards for proving the "seriousness" of a psychic injury. The court in *Yeager, supra,* in setting the standards for a claim for intentional infliction of emotional distress, recognized the similarities between the two

actions and adopted the standard established in *Paugh* for proving the seriousness of an intentional injury. *Yeager, supra,* at 374, 6 OBR at 425, 453 N.E. 2d at 671. Thus, an action to recover for emotional distress may not be premised upon mere embarrassment or hurt feelings, but must be predicated upon a psychic injury that is both severe and debilitating. *Paugh, supra,* at 78, 6 OBR at 119, 451 N.E. 2d at 765. Proof of serious emotional distress may be offered in the form of expert medical testimony, but expert opinion is not indispensable. Lay witnesses acquainted with the plaintiff may also testify to significant changes that they have observed in the emotional or habitual makeup of the plaintiff. *Id.* at 80, 6 OBR at 121, 451 N.E. 2d at 767. Finally, the determination of whether and to what extent the defendant's conduct caused the plaintiff serious emotional distress is for the trier of fact. *Id.*

Uebelacker, in support of his claim for intentional infliction of emotional distress, submitted the affidavit of Barbara Uebelacker, his wife of twenty-six years. She averred that for over a year, from the time of his discharge from Cincom until two months after he found other employment, Uebelacker was highly emotional, moody, tearful, forgetful, distrusting of others, compulsive, uncommunicative and unsupportive. She further stated that his distrust of others has continued, and that her concern for his state of mind prompted her to contact a physician on his behalf. Viewing the pleadings and evidentiary material submitted in a light most favorable to Uebelacker, we find that issues of fact remain as to whether the defendants' conduct caused Uebelacker serious emotional distress.

The defendants assert, however, that Uebelacker's claim for intentional infliction of emotional distress must

fail because their conduct in discharging Uebelacker, regardless of its nature, was privileged. We disagree.

Conduct that might otherwise be extreme and outrageous, and thus actionable upon a claim for intentional infliction of emotional distress, is privileged when "the actor * * * has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress. * * *" 1 Restatement of the Law 2d, Torts (1965) 76, Section 46, Comment *g*. Thus, when an employer discharges an at-will employee, the employer "has done no more than insist upon his legal rights" and bears no liability to the employee for any resultant emotional distress, regardless of whether the employer intended or reasonably should have anticipated that result. *Foster* v. *McDevitt* (1986), 31 Ohio App. 3d 237, 31 OBR 520, 511 N.E. 2d 403.

As we determined in our discussion of Uebelacker's claim for wrongful discharge under the doctrine of promissory estoppel, there is some basis for a determination that the at-will nature of the employment relationship between Uebelacker and Cincom was modified by Sewall's verbal assurances of job security. Thus, issues of fact remain as to whether the defendants' conduct in discharging Uebelacker was privileged, *i.e.*, whether the defendants in discharging Uebelacker have done no more than insist upon their legal rights, and whether they bear some liability to Uebelacker for any resultant emotional distress.

We further note that Uebelacker's claim for emotional distress was predicated only in part upon his allegedly wrongful discharge. In his complaint, Uebelacker also cited the defendants' "intentional acts of harassment, wrongful detention, defamation, and assault and battery"

in support of his allegation of extreme and outrageous conduct, and the factual basis for this allegation was thoroughly explored in his deposition. An actor's insistence on his legal rights must be done "in a permissible way," Restatement, *supra*, at 76, Section 46, Comment *g*, and the "extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." *Id.* at 74, Section 46, Comment *e*; see, also, *Foster, supra*. Thus, we find that, even if the defendants' conduct in discharging Uebelacker was privileged, issues of fact remain as to whether the conduct preceding and surrounding his discharge was extreme and outrageous or constituted conduct in excess of privilege.

## D

Finally, we address Uebelacker's contention that summary judgment for the defendants was improper on his claims for defamation and assault and battery when the evidentiary material submitted by the defendants in support of their motion failed to establish the absence of factual issues on those claims. We agree.

Civ. R. 56(B) provides that "[a] party against whom a claim * * * is asserted * * * may * * * move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof." Civ. R. 56(E) sets forth the form of affidavits and provides that the party opposing a motion for summary judgment which is supported by evidentiary material may not rest upon the allegations in his pleading but must, by affidavit or otherwise, set forth specific facts to demonstrate the existence of a genuine issue for trial. The burden of demonstrating that no genuine issue

exists as to any material fact is on the moving party, and the party opposing the motion is entitled to have the evidence construed most strongly in his favor. Civ. R. 56(C); *Toledo's Great Eastern Shoppers City, Inc.* v. *Abde's Black Angus Steak House No. III, Inc.* (1986), 24 Ohio St..3d 198, 24 OBR 426, 494 N.E. 2d 1101. When the evidentiary material submitted in support of a motion for summary judgment does not establish the absence of a genuine issue of fact for trial, summary judgment must be denied, even if the party opposing the motion presents *no* evidentiary material. *Id.* at 202, 24 OBR at 429, 494 N.E. 2d at 1104.

Uebelacker, in Count II of his complaint, sought recovery for assault and battery, alleging that, in the course of his detention in his cubicle, Veith and another Cincom employee came into physical contact with him, that the contact was intentional, against his will, without his consent, unwarranted by social usage, and without business justification, and that the defendants' conduct placed him in fear of the use of additional force. In Count III, Uebelacker charged that Veith and other Cincom employees defamed him by forcibly escorting him from the premises in full view of other Cincom employees, thereby implying that he was guilty of serious misconduct. The allegations advanced in Counts II and III of the complaint were supported by Uebelacker's deposition and controverted by Veith in his deposition.

We note, as a preliminary matter, that although the court below granted summary judgment for the defendants on all claims advanced by Uebelacker in his complaint, the defendants in their motion for summary judgment challenged only those claims for breach of contract, wrongful discharge, promissory estoppel, emotional distress and, in a footnote, false imprisonment. Civ. R. 56 permits the entry of summary judgment in favor of a party against whom a claim has been asserted only upon a determination that "the *moving* party is entitled to judgment as a matter of law." (Emphasis added.) Civ. R. 56(C). This requirement prevents the entry of summary judgment in favor of a non-moving party. *James R. Soda, Inc.* v. *United Liberty Life Ins. Co.* (1986), 24 Ohio St. 3d 188, 24 OBR 418, 494 N.E. 2d 1099; *Levy* v. *University of Cincinnati* (Nov. 4, 1987), Hamilton App. No. C-860780, unreported. Thus, the defendants' failure to move for summary judgment on Uebelacker's claims for assault and battery and defamation precludes the entry of summary judgment in their favor on those claims.

We further determine that the evidentiary material submitted by the defendants in support of their motion for summary judgment did not establish the absence of genuine issues of material fact on Uebelacker's claims for assault and battery and defamation. Therefore, we conclude that summary judgment for the defendants on the claims for assault and battery and defamation presented in Counts II and III of the complaint was improvidently granted.

To summarize, we have found that summary judgment was properly entered for the defendants on Uebelacker's claim for relief under Count IV of his complaint, seeking enforcement of Cincom's benefit book under the employee-handbook exception to the employment-at-will doctrine, on his claim for relief under Count VI, urging the adoption of a public policy exception to the at-will doctrine, and on his claim in Count V, to the extent that he therein sought enforcement of the provisions of Cincom's benefit book under the doctrine of promissory estoppel. Therefore, the portion of Uebelacker's assignment of error that challenges

the entry of summary judgment for the defendants on those claims is overruled.

We have determined, however, that the entry of summary judgment for the defendants on the claims advanced by Uebelacker in Counts II and III of his complaint, seeking recovery for assault and battery and defamation, was precluded by the defendants' failure to move for summary judgment on those claims. We have also found that summary judgment for the defendants was improvidently granted on his claim for relief in Count I for false imprisonment, on his claim in Count V, to the extent that he sought enforcement of Sewall's assurances of job security under the doctrine of promissory estoppel, and on his claim in Count VII, seeking recovery for emotional distress. Thus, the portion of Uebelacker's assignment of error that challenges the entry of summary judgment for the defendants on those claims is sustained.

## II

Veith, in his sole assignment of error, contends that the court below erred in granting summary judgment for Uebelacker on his counterclaim for malicious prosecution. We find no merit to this contention.

The tort of malicious prosecution provides a remedy when a prosecution that is maliciously instituted or continued without probable cause to believe that it could succeed ultimately ends in failure. *Thompson Properties, Inc.* v. *Seinsheimer* (Feb. 12, 1986), Hamilton App. No. C-850168, unreported. To sustain an action for malicious prosecution, the plaintiff must plead and prove: (1) the malicious institution of prior proceedings; (2) a lack of probable cause for filing the prior action; (3) termination of the prior proceedings in favor of the aggrieved party; and (4) seizure of the ag-

grieved party's person or property during the course of the prior proceedings. *Crawford* v. *Euclid Natl. Bank* (1985), 19 Ohio St. 3d 135, 19 OBR 341, 483 N.E. 2d 1168; *Thompson Properties, Inc., supra.*

Veith, in his counterclaim, alleged that Uebelacker instituted and continued the criminal prosecution against him for unlawful restraint without probable cause, with knowledge that the charge had no basis in law or fact, and with malicious intent. Uebelacker's motion for summary judgment on the counterclaim was supported by the affidavits of Uebelacker, his attorney, and the two assistant prosecuting attorneys who conducted Veith's prosecution. The affidavits substantiate Uebelacker's contention that the criminal charge against Veith was instigated on the advice of counsel and the assistant prosecutors, after a private-complaint hearing on the matter and after one of the prosecutors had interviewed Uebelacker, Veith, and Dennis Butler and determined that there was probable cause to proceed. Veith's motion in opposition to summary judgment was supported by the transcript of the proceedings on the criminal charge.

We note at the outset that, once a criminal complaint is issued, the complainant is merely a witness for the state in the proceedings, the disposition of which lies within the province of the trial court. *Grubb* v. *Standard Oil Co.* (Oct. 22, 1986), Hamilton App. No. C-850775, unreported. Therefore, Veith has no claim against Uebelacker for the malicious continuation of his criminal prosecution.

In addition, the defense of advice of counsel, if established, constitutes a complete defense to an action for malicious prosecution if the defendant communicated to counsel all facts of which he had knowledge or, by reasonable diligence, could have ascer-

tained, bearing on the accused's guilt or innocence. *Ashcraft* v. *Lodge* (1963), 118 Ohio App. 506, 26 O.O. 2d 14, 192 N.E. 2d 789. Veith, in the evidentiary material accompanying his memorandum in opposition to Uebelacker's motion for summary judgment, has failed to controvert Uebelacker's assertion that he instigated Veith's criminal prosecution upon advice of counsel, after full disclosure to counsel of the relevant facts. We, therefore, conclude that summary judgment was appropriately entered for Uebelacker on Veith's counterclaim and, accordingly, overrule Veith's sole assignment of error.

Upon our determination that the trial court acted improvidently in entering summary judgment in favor of the defendants on Uebelacker's claims for assault and battery, defamation, false imprisonment, promissory estoppel based on Sewall's assurances of job security, and emotional distress, we reverse those portions of the judgment entered below and remand for further proceedings in accordance with law; in all other respects, the trial court's judgment is affirmed.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

HILDEBRANDT, P.J., SHANNON and UTZ, JJ., concur.