OPINION
{¶ 1} This appeal arises from an award of summary judgment granted in the Columbiana County Court of Common Pleas, Probate Division. Appellant, Tele-Media Corporation of Delaware ("TMCD") filed a declaratory judgment action against the Estate of Dorothy Myers. Appellee, James T. Sturgeon is the named executor and the primary beneficiary identified in the decedent's last will and testament. The dispute between the parties concerns whether the decedent entered into an oral agreement modifying a debenture or whether her estate is entitled to its proceeds.
 {¶ 2} Appellant filed a motion for summary judgment asking the court to recognize the alleged oral modification. Appellee filed a cross-motion for summary judgment, granted by the trial court. For the following reasons, however, neither party was entitled to summary judgment. Accordingly, the trial court's decision is reversed and this matter is remanded.
 {¶ 3} The decedent and her late husband Daniel Myers (collectively "the Myers") had an employment history and friendship with Appellant's corporate predecessor, Tele-Media Corporation ("TMC"), and its CEO, Robert Tudek. The Myers initially loaned TMC money in 1976. Thereafter, the Myers converted their loan into an investment, and in 1979, TMC issued the Myers a 12% subordinated debenture in the principal amount of $385,000, which was due November 30, 1987. The debenture also warranted the Myers the right to purchase 77 shares of TMC's preferred stock or to receive $128,359 in cash prior to 1989.
 {¶ 4} In 1980, the Myers and TMC modified the debenture. This modification is not in dispute. The amended debenture provided that TMC would pay to the Myers monthly $5,000 interest payments for the remainder of their lives with payment of the principal debt amount, $385,000, upon the death of the surviving spouse. The amended debenture also provided events that would constitute and trigger TMC's "default." Upon default, all principal and interest due under the debenture was due and payable to the Myers. A triggering event for default included, but was not limited to, the appointment of a receiver for TMC, the discontinuation of TMC's business, or the dissolution or liquidation of TMC.
 {¶ 5} According to Appellant, this modified agreement remained in effect until 1984. Appellant claims that in 1984, TMC was in default on the debenture as a result of TMC's sale of its stock to Tele-Communications Inc. ("TCI"). TMCD was then formed to assume TMC's liabilities. This is the only evidence in the record concerning TMC's alleged default.
 {¶ 6} At this point, Appellant asserts that Dorothy Myers and TMCD, by and through Robert Tudek, agreed to an oral modification of the Myers' amended debenture. Daniel Myers had no part in this alleged agreement. Specifically, Tudek claims that Dorothy did not want to receive the lump sum payment for fear that her husband would poorly invest the money. Instead, Appellant claims that Dorothy and Tudek orally agreed that TMCD would continue to pay the Myers $5,000 monthly as principal payments until the deaths of both of the Myers. In return, Dorothy supposedly forgave TMCD the final lump sum payment that was presently due as a result of TMC's supposed default. This agreement was never reduced to writing.
 {¶ 7} Thereafter, however, Dorothy memorialized her intent to forgive TMC of the final lump sum payment in a last will and testament and in an accompanying affidavit, which were prepared in 1986, roughly two years following the alleged oral agreement.
 {¶ 8} Daniel Myers died in 1988.
 {¶ 9} In 1995, Dorothy executed a subsequent last will and testament which revoked any and all prior wills. Dorothy's 1995 will does not refer to the TMC funds or any agreement concerning TMC or any of its successor companies. This 1995 will was admitted into probate upon Dorothy's death in 2003.
 {¶ 10} Appellant subsequently filed its declaratory judgment action asking the probate court to recognize and honor the alleged oral modification to the amended debenture. Appellant filed a motion for summary judgment. Thereafter, Appellee, Dorothy's executor, filed his cross-motion for summary judgment.
 {¶ 11} In Appellee's cross-motion for summary judgment he argued that there was no oral modification to the parties' agreement. Instead, Appellee asserted that the monthly $5,000 payments were simply interest payments made to the Myers in accordance with the 1980 amended debenture. The trial court agreed and concluded that pursuant to the amended debenture, TMC's sale of its stock did not constitute a default. Accordingly, it determined that the monthly payments to Dorothy were interest payments, and the lump sum final payment was due to her estate pursuant to the 1980 amended debenture. (Dec. 10, 2004, Judgment Entry.)
 {¶ 12} The trial court denied Appellant's request, but granted Appellee summary judgment as a matter of law. The trial court specifically concluded that, contrary to Appellant's arguments, TMC was never in default on the amended debenture. It also found that no oral modification of TMC's liability had occurred. (Dec. 10, 2004, Judgment Entry.)
 {¶ 13} Appellant then filed a motion for relief from judgment in the trial court, but it was overruled. (Dec. 30, 2004, Judgment Entry.)
 {¶ 14} Appellant timely appealed both decisions to this Court and raises five assignments of error on appeal. Appellant's first three assignments of error are interrelated, arguing that the trial court erred in granting Appellee summary judgment as a matter of law. The first three assignments of error state:
 {¶ 15} "I. THE TRIAL COURT ERRONEOUSLY GRANTED DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BECAUSE OF ITS FAILURE TO VIEW THE EVIDENCE OF RECORD IN THE LIGHT MOST FAVORABLE TO TMCD, AS THE PARTY OPPOSING THE MOTION
 {¶ 16} "A. The Standard Of Review Applicable To An Order ByThe Trial Court Granting Summary Judgment Is De Novo
 {¶ 17} "B. The Trial Court Erred By Failing To Construe TheEvidence Of Record, Including The Inferences To Be Drawn From TheUnderlying Facts As Contained Within The Affidavits And OtherExhibits, In The Light Most Favorable To TMCD
 {¶ 18} "II. THE TRIAL COURT ERRED BY IMPROPERLY WEIGHING THE EVIDENCE OF RECORD AND BY IMPROPERLY MAKING DETERMINATIONS REGARDING THE CREDIBILITY OF AFFIDAVIT TESTIMONY AND OTHER EXHIBITS OFFERED BY TMCD TO ESTABLISH THAT THE PARTIES ORALLY MODIFIED THE TERMS OF THE AGREEMENT AND AMENDED DEBENTURE.
 {¶ 19} "III. THE TRIAL COURT IMPROPERLY GRANTED SUMMARY JUDGMENT IN FAVOR OF DEFENDANT BASED ON ITS ERRONEOUS ASSUMPTION THAT THE EXISTENCE OF AN ORAL MODIFICATION TO A WRITTEN CONTRACT IS A QUESTION OF LAW FOR THE COURT TO DETERMINE, RATHER THAN A QUESTION OF FACT TO BE RESERVED FOR DETERMINATION BY THE FACT FINDER."
 {¶ 20} Before summary judgment can be granted, a trial court must determine that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against the motion for summary judgment is made, that conclusion is adverse to the opposing party. Civ.R. 56(C); Temple v. Wean United,Inc. (1977) 50 Ohio St.2d 317, 364 N.E.2d 267.
 {¶ 21} Because summary judgment is a procedural device designed to terminate litigation, it should be granted cautiously. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12, 467 N.E.2d 1378.
 {¶ 22} When a declaratory judgment action is instituted in a probate court, questions of fact are usually determined by the probate judge unless a party requests a jury. Then, the probate judge shall, in the exercise of his discretion, order questions of fact to be tried by a jury. Renee v. Sanders (1953),160 Ohio St. 279, 116 N.E.2d 420, paragraph five of the syllabus; accord Giurbino v. Giurbino (1993), 89 Ohio App.3d 646, 662,626 N.E.2d 1017; First Nat. Bank of Southwestern Ohio v. MiamiUniversity (1997), 121 Ohio App.3d 170, 177, 699 N.E.2d 523. Appellant, TMCD, filed a jury demand in the instant matter.
 {¶ 23} A trial court should only consider certain material in rendering summary judgment, including pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact. A court may also consider sworn or certified copies of documents attached to affidavits. Civ.R. 56(E).
 {¶ 24} As previously indicated, Appellant's motion for summary judgment sought an order from the court recognizing the oral modification of the debenture. In response, Appellee's motion asserted that Dorothy merely made a gratuitous promise that had since been revoked.
 {¶ 25} Under Ohio law, the parol evidence rule forbids the use of an oral statement made before or at the time a written contract is entered to vary that contract. However, this rule does not apply to a later oral modification of the contract.Uebelacker v. Cincom Systems, Inc. (1988), 48 Ohio App.3d 268,549 N.E.2d 1210, paragraph three of the syllabus. Thus, written contracts may be orally modified or modified by subsequent acts.Wilhelmy v. 15201 Detroit Corporation (June 5, 1997), 8th Dist. No. 71290, 3, quoting, Morrison v. DeVore Trucking, Inc.
(1980), 68 Ohio App.2d 140, 428 N.E.2d 438. However, "[t]he general rule is that a written contract may be orally amended if the oral amendment has the essential elements of a binding contract." Carrocce v. Shaffer (Oct. 31, 1997), 11th Dist. No. 96-T-5521, 4, citing Richland Buildings, Inc. v. Thome, etal. (1950), 88 Ohio App. 520, 527, 100 N.E.2d 433. Further, the burden of proving an oral modification is on the party seeking to establish the modification. Caldwell Banker Residential RealEstate Serv. v. Sophista Homes, Inc. (Oct. 2, 1992), 2nd Dist. No. CA-13191, 3.
 {¶ 26} In support of its motion for summary judgment, Appellant submitted the affidavits of Robert Tudek and C. Ashley Pike.
 {¶ 27} Robert Tudek states in his affidavit that the sale of the TMC stock in 1984 to TCI constituted a default by TMC on the Myers' debenture. While this statement is conclusory, there is no evidence to the contrary. As a result of the apparent default, Tudek states that he and Dorothy discussed the lump sum payout that was due and payable to the Myers. As an accommodation to the Myers, he, as the CEO of TMC, verbally agreed with Dorothy to repay the $385,000 to the Myers via $5,000 monthly payments. This agreement was designed to prevent her husband from making poor investments. Tudek claims that he and Dorothy agreed that these monthly payments would discharge TMC of its repayment of the lump sum payment of the $385,000. Tudek states that their agreement was never memorialized. (Affidavit of Robert Tudek.)
 {¶ 28} Further, even though a written contract modification was not required, Appellant argues that Dorothy's 1986 will and affidavit are evidence establishing that the oral modification had previously occurred. The record is silent as to what, if anything, occurred between 1984 and 1986.
 {¶ 29} Tudek stated in his affidavit that he received a letter and affidavit from Dorothy in 1986. Tudek explained, "[i]t is my belief that Dorothy Myers intended that the Affidavit would provide me with written confirmation of our oral agreement[.]" (Affidavit of Robert Tudek, ¶ 11.)
 {¶ 30} Appellant also submitted the affidavit of C. Ashley Pike in support of its motion for summary judgment. Pike states in his affidavit that he represented Dorothy Myers in 1986, and that he prepared her 1986 last will and testament and affidavit. In his affidavit, Pike attempts to explain Dorothy's desires and intentions in drafting her 1986 will. His affidavit, however, is somewhat contradictory. It provides in part,
 {¶ 31} "I met with Dorothy Myers to determine her testamentary intentions and the manner in which she desired to dispose of her property and assets upon her death. Thereafter, I drafted the Will in a manner which accurately reflected Dorothy Myers' intentions, including her intention that the debt formerly owed by Tele-Media Corporation to Dorothy and Daniel Myers be regarded, at the time of her death, as forgiven and paid in full." (Emphasis added.) (Affidavit of C. Ashley Pike, ¶ 1.)
 {¶ 32} Pike also stated that he prepared an affidavit for Dorothy, "[i]n connection with the preparation of the Will[.]" Pike explained that, "[i]n accordance with her wishes, as she expressed them to me, I prepared an Affidavit for Dorothy Myer's [sic] signature which was intended to reflect the fact that, atthe time the Affidavit was prepared, the debt owed by Tele-Media Corporation to Dorothy Myers and her husband * * * had been paid in full and forgiven in its entirety." (Emphasis added.) (Affidavit of C. Ashley Pike, ¶ 3.) Dorothy's affidavit and 1986 last will and testament were authenticated by Pike and attached to his affidavit.
 {¶ 33} Appellant relies on the foregoing in arguing that the debt was forgiven by Dorothy at the time of the alleged oral agreement between Dorothy and Tudek. Appellant argues that Dorothy was only reiterating their agreement in her will and affidavit.
 {¶ 34} However, Dorothy's 1986 last will and testament, prepared by C. Ashley Pike, provides in part,
 {¶ 35} "ITEM 4. I forgive the balance due me from Tele-Media Corporation of Pennsylvania on a certain note just as though the said note had been paid in full. I specifically direct my executor to take such steps as are necessary to mark all documents pertaining thereto as paid in full and to return the same to Tele-Media Corporation of Pennsylvania. I consider that monies paid Dan and me over the years to have discharged any and all obligations due me from Tele-Media Corporation in full." (1986 Last Will and Testament of Dorothy Myers.)
 {¶ 36} Further, Dorothy's October 29, 1986, affidavit provides:
 {¶ 37} "Now comes Dorothy H. Myers, * * * being first duly sworn and states that:
 {¶ 38} "1. She has executed her Last Will and Testament dated October 29, 1986;
 {¶ 39} "2. She has not executed any later Last Will and Testament;
 {¶ 40} "3 As a part thereof she forgives Tele-Media Corporation any and all obligations, promissory notes or otherwise, due her and her husband Daniel Myers, from Tele-Media Corporation." (Emphasis added.)
 {¶ 41} Her 1986 will was later revoked in Dorothy's 1995 last will and testament.
 {¶ 42} Based on the foregoing, Appellant claimed that it was entitled to judgment as a matter of law since the evidence established the oral agreement between Dorothy and Tudek. Thus, it claimed that it should, pursuant to this oral agreement, be relieved of any obligations to Dorothy's estate.
 {¶ 43} However, based on the foregoing, Dorothy's intentions were not wholly clear. The language in her affidavit seems to indicate she would forgive TMC upon her death, and the language employed in her 1986 will tends to support this, i.e., forgiveness of the debt upon her death.
 {¶ 44} However, Tudek's affidavit states the opposite. Further, Pike, in his affidavit, appears to state that Dorothy had forgiven TMC's debt in 1986; however, his affidavit has internal conflicts. On one line it says that Dorothy intended to forgive TMC at the time of her death; but in another sentence it states that Dorothy had forgiven TMC's debt at the time the affidavit was drafted. (Affidavit of C. Ashley Pike.)
 {¶ 45} Her later will, however, makes no mention of this alleged intent and specifically revokes the earlier will documents. Thus, the record is not factually clear. There remain questions as to facts surrounding Dorothy's intent. As such, summary judgment was not a proper means to dispose of this matter.
 {¶ 46} We must also note that there is absolutely no evidence in the trial court's record relative to Dorothy's power or legal authority to modify the amended debenture on her husband's behalf. Although there are references to her husband's lack of competency, there is nothing evidencing whether he was deemed legally incompetent or whether Dorothy had power of attorney to act on his behalf at the time. Thus, assuming there was an attempt at oral modification between Tudek and Dorothy, this agreement may be invalid absent Dorothy's legal authority to bind her husband to such an agreement.
 {¶ 47} It should also be noted that Appellee provided numerous attachments in support of his argument in his responsive brief. One document was a letter addressed to Dorothy's executor from Tudek. There were several TMC financial documents attached. Appellee also attached copies of trusts executed by the Myers in 1984 that specifically bequeath the TMC note. However, none of these documents were authenticated and we are not certain that these were properly authenticated and presented to the trial court. As such, these documents could not have been considered by the court and cannot be considered on appeal.
 {¶ 48} Appellee's motion for summary judgment refers to the deposition testimony of Robert Tudek and a Nadine Sturgeon. However, neither deposition transcript was filed with the trial court at the time the trial court decided to grant summary judgment. Again, because these were not properly before the trial court they cannot be considered on appeal.
 {¶ 49} In addition, Appellant, Appellee, and the trial court all discussed and attempted to construe a letter written by Dorothy to Robert Tudek in 1986. Tudek refers to this letter in his affidavit. However, this letter was neither certified nor attached to Tudek's affidavit. It was also not authenticated anywhere else in the trial court's record. It also should not have been considered in the trial court's decision to grant summary judgment.
 {¶ 50} In reaching its decision, the trial court concluded that Dorothy previously intended, in 1986, to forgive TMC of the lump sum payment upon her death. In so doing, the trial court must have disregarded Tudek's affidavit stating that Dorothy agreed in 1984 to forego the lump sum payment following default in favor of continued $5,000 per month payments. This was error. Tudek's testimony that there was a default and an oral modification to the amended debenture cannot be disregarded at the summary judgment stage. The trial court appears to have engaged in weighing the "evidence" before the court. At the very least, such conflicts in the evidence show that genuine issues of material fact exist. While the same result may, in fact, be reached if evidence is properly submitted and appropriately weighed by the trier of fact, these determinations were not properly resolved by a summary judgment motion. Accordingly, summary judgment was inappropriate. Civ.R. 56. Based on the foregoing, neither party was entitled to summary judgment.
 {¶ 51} Appellant's fourth assignment of error alleges:
 {¶ 52} "IV. THE TRIAL COURT ERRONEOUSLY RULED THAT NO ORAL MODIFICATION HAD OCCURRED AS A MATTER OF LAW WITHOUT CONSIDERING TMCD'S DETRIMENTAL RELIANCE UPON THE ORAL PROMISES MADE BY DOROTHY MYERS AND THE RESULTANT UNJUST ENRICHMENT OF HER ESTATE"
 {¶ 53} In order to establish unjust enrichment, one must prove: (1) a benefit bestowed on the defendant, (2) the defendant's knowledge of the benefit, and (3) that it would be unjust for the defendant to retain the benefit without payment.Pine v. Price, 7th Dist. No. 01-CO-46, 2002-Ohio-5223, at ¶ 19;Brewster v. Fox, 11th Dist. No. 2003-L-010, 2004-Ohio-1145, at ¶ 11.
 {¶ 54} In the instant matter, Appellant argues that Dorothy and her estate were unjustly enriched. This argument is based on the assertion that TMC was in default on the debenture. Again, the only evidence in the record on this issue is Tudek's conclusory affidavit which states that TMC was in default. Assuming that TMC was in default, then the lump sum amount of $385,000 was due and payable to the Myers at the time of this default. Instead of making this payment, however, Appellant claims that it agreed to pay the Myers $5,000 per month for the remainder of their lives.
 {¶ 55} According to Appellant, it paid the Myers more than the $385,000 owed before Dorothy's death. Appellant asserts that its monthly $5,000 payments from 1986 through 2003 totaled $1,175,000, which was more than double its underlying obligation. According to Appellant's calculations, it paid Dorothy $1,175,000 on a $385,000 debt. Based on these calculations, Appellant argues that any award to Dorothy's estate would constitute unjust enrichment.
 {¶ 56} In an attempt to explain TMC's consideration for the alleged oral modification, Appellant asserts in its motion for summary judgment that it was essentially gambling on the Myers' prompt demise. For example, had neither Dorothy nor her husband survived more than five years after the agreement, then TMC would have profited from the alleged oral agreement.
 {¶ 57} However, Appellant's unjust enrichment arguments presume a default occurred. At default, Dorothy's oral agreement served to unjustly enrich her if she lived a long life, but would benefit TMC if she and her husband quickly died. Appellant's argument only makes any sense, however disagreeable, if we assume a default on the amended debenture occurred. Again, the only "evidence" submitted on this issue was a conclusory affidavit.
 {¶ 58} Further, this ignores the argument which can be made that Appellant held on to the principle and, assuming a default, was not forced to disgorge a large lump sum payment. Notably lacking in this argument is how or whether the Myers' money was invested by Appellant and what interest it earned for Appellant, if any. Thus, this "unjust enrichment" argument is not completely flushed out by Appellant.
 {¶ 59} The trial court found there was no default; thus, the Myers were entitled under the terms of the debenture to continued interest payments of $5,000 per month with a lump sum payment on the death of the surviving spouse. We are cognizant that the court made such a finding by weighing evidence which does not appear to be properly before the court. However, due to the conflicting evidence, or lack of evidence of record, summary judgment on this issue was not proper because Appellant has not proven as a matter of law that Appellees were unjustly enriched. Hence, this assignment of error must fail.
 {¶ 60} Appellant's final assignment of error asserts:
 {¶ 61} "THE TRIAL COURT ERRONEOUSLY DENIED TMCD'S MOTION FOR RELIEF FROM JUDGMENT."
 {¶ 62} Civ.R. 60(B) permits a court to relieve a party from a final judgment based on certain delineated reasons. The decision to grant a party relief is within the trial court's discretion. Our standard of review is limited to whether the trial court abused its discretion. State ex rel. Richard v. Seidner (1996),76 Ohio St.3d 149, 666 N.E.2d 1134. Appellant filed a Civ.R. 60(B) motion seeking relief from the trial court's decision to grant Appellee summary judgment. However, Appellant's brief on appeal fails to provide any written argument in support of this claimed error. Accordingly, and in light of our underlying decision herein, we need not discuss Appellant's final assignment of error.
 {¶ 63} In conclusion, in viewing the evidence in a light most favorable to Appellant, Appellee was not entitled to summary judgment as a matter of law. This matter is remanded to the trial court for a hearing and a determination by the trier of fact to appropriately determine whether a default on the debenture occurred or whether the original debenture as amended applies. If default occurred, the court may then determine whether Tudek and Dorothy agreed to an oral modification of the amended debenture and whether Dorothy had the legal authority to act on her husband's behalf. Again, the determination of whether factual issues will be heard by a jury is within the sound discretion of the probate court. Renee v. Sanders (1953), 160 Ohio St. 279,116 N.E.2d 420, paragraph five of the syllabus. Accordingly, the decision of the probate court is hereby reversed and this matter is remanded.
Vukovich, J., concurs.
DeGenaro, J., concurs.