**Chester G. HAWLEY, Plaintiff,**

v.

**DRESSER INDUSTRIES, INC. and George A. Korb, Defendants.**

No. C–2–85–0332.

United States District Court, S.D. Ohio, E.D.

March 8, 1990.

See also, 737 F.Supp. 445.

Jack R. Alton and Patrick H. Boggs, Lane, Alton & Horst, Columbus, Ohio, for plaintiff.

John Zeiger, Jones, Day, Reavis & Pogue, Columbus, Ohio, and Andrew Kramer, and Nancy Lee, Jones, Day, Reavis & Pogue, Washington, D.C., for defendants.

## OPINION AND ORDER

KINNEARY, District Judge.

This matter comes before the Court to consider the motion of the plaintiff, Chester G. Hawley, for partial summary judgment.

In 1985, Hawley filed this employment discrimination action against the defendant, Dresser Industries ("Dresser"), his former employer, and defendant George A. Korb, the Corporate Senior Vice President–Operations of the Company. In 1981, Dresser demoted the plaintiff, then age 59, from his position as President of Dresser's Construction Equipment Group ("CEG") to Vice President–Planning for CEG. James C. Hilton, then age 39, replaced Hawley in the position of President. Hawley and Dresser agreed that the plaintiff would receive essentially the same salary and benefits following the demotion. In 1983, Dresser eliminated the plaintiff's position and, unlike other individuals in these circumstances, Dresser terminated Hawley instead of transferring him to another position within Dresser.

The plaintiff filed a charge with the Equal Employment Opportunity Commission alleging discriminatory discharge on August 28, 1984. The plaintiff then filed this action on January 18, 1985. On July 20, 1988, the Court denied a summary judgment motion filed by Dresser on discriminatory discharge claims brought under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634 (1982 & Supp. V 1987).

The plaintiff now moves for partial summary judgment on three issues. First, the plaintiff posits that an employment agreement existed between Hawley and Dresser, the terms and conditions of which were the subject of four documents. Second, this employment agreement provided that Dresser would not terminate Hawley without just cause. Third, the plaintiff argues that Dresser terminated Hawley in violation of this employment agreement.

■ In considering the plaintiff's motion, the Court is mindful that summary judgment is appropriate only in limited circumstances. Rule 56(c) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The moving party bears the burden of establishing the absence of a genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The United States Supreme Court has held, however, that the standard of summary judgment "mirrors the standard for a directed verdict under Federal Rule of "Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). This is true where, for instance, the dispute turns only on a legal question and the moving party must prevail as a matter of law even if the Court were to resolve all factual disputes in favor of the non-moving party. *See Ross v. Franzen*, 777 F.2d 1216, 1222 (7th Cir.1985); 10A C. Wright, A. Miller & M. Kane, *Fed-*

*eral Practice and Procedure* § 225, at 79 (2d ed. 1983).

■ A summary judgment motion also requires special treatment of the record. The Court "must view the evidence presented through the prism of the substantive evidentiary burden" and determine "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Anderson,* 477 U.S. at 252, 254, 106 S.Ct. at 2512, 2513; *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Nonetheless, in making this determination the Court may not impinge upon the proper function of the jury. Therefore, all of "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. With this standard in mind, the Court will address the plaintiff's motion for partial summary judgment.

## I. THE EMPLOYMENT AGREEMENT

The plaintiff contends that no genuine issue of material fact exists as to the composition of the employment agreement between the parties. The plaintiff contends that an "employment agreement" existed between the parties and four documents define its terms and conditions: (1) a Letter Agreement dated December 31, 1966; (2) the Amended Officer Compensation Program dated June 25, 1973; (3) the Dresser Industrial Relations Manual ("the Manual") dated June 29, 1982 and revised on October 1, 1982; and (4) an internal memorandum from Ralph Ytterberg dated October 5, 1982.

Hawley notes that he entered the first two agreements with the defendant's predecessor, Jeffrey Galion Manufacturing Company ("Jeffrey Galion"). The Letter Agreement signed by the President of Jeffrey Galion and Hawley binds the parties to abide by the Officer Compensation Program dated August 19, 1966. The Officer Compensation Program describes the deferred compensation and pension provisions for the employment of Jeffrey Galion officers. Jeffrey Galion amended the Officer Compensation Program on June 25, 1973. The plaintiff argues that when Dresser purchased Jeffrey Galion, it assumed Jeffrey Galion's duties under the Letter Agreement and Amended Officer Compensation Program.

According to the plaintiff, the third and fourth documents also define the terms and conditions of Hawley's employment. Given an intent of both parties to abide by the terms in the Manual, the Manual became a binding part of the employment agreement. The Ytterberg memorandum, distributed to the management officers of various Dresser groups, summarized the Manual, and given a similar intent of both parties to be bound by its terms, the plaintiff contends that it is also part of the employment agreement as a whole.

The defendants maintain that Dresser did not assume any employment agreement which Jeffrey Galion and an employee may have entered which could not be terminated on notice of thirty or fewer days. The defendants admit that the Letter Agreement and the Amended Officer Compensation Program are together a binding, written contract. They relate to compensation terms and conditions of the employment, namely cash incentive payments, deferred compensation, and a pension guaranty. Yet they do not constitute an "employment agreement." In other words, the defendants apparently believe that the two documents are not an "employment agreement" in the sense of a contract which establishes the prima facie employment relationship between the parties, that is, a contract containing an employee's promise to work and an employer's promise to pay compensation in exchange.[1]

---

1. In *Helle v. Landmark, Inc.,* 15 Ohio App.3d 1, 8, 472 N.E.2d 765, 773 (1984), the court made a distinction between the prima facie employment relationship and subsidiary contractual arrangements. The prima facie relationship is the original arrangement in which the employee agrees to provide services in exchange for compensation. The court stated that employee manuals or other writings styled "personnel policies and practices" create subsidiary contractual relations which constitute terms and conditions added to the original employment contract. *Id.,*

The defendants also deny that the Dresser Industrial Relations Manual and the Ytterberg memorandum were part of any employment agreement. The Letter Agreement and Amended Officer Compensation Program made no mention of them. Moreover, the plaintiff could not recall having seen these documents prior to his termination. Furthermore, the defendants note that the Ytterberg memorandum does not indicate that Ytterberg intended to send a copy to Hawley. Also, if Hawley saw the documents, he received them in his capacity as manager, not as employee. These facts indicate that the Manual and Ytterberg memorandum could not have induced a bargained-for detriment, namely continued work in exchange for the alleged promises which these documents contain. In addition, the Manual contains no attestation clause; this omission indicates a lack of contractual intent. Finally, the defendants contend that even if the documents did demonstrate an intent to bind, the parol evidence rule bars the consideration of these documents to vary the terms of the Amended Officer Compensation Program.

The plaintiffs rebut by noting that Hawley had seen the Manual and knew of the contents of the Ytterberg memorandum during his employment. Moreover, the plaintiff argues that a handbook distributed only to managers may induce continued employment and may therefore be binding. Documents received by a manager are also received by the manager in the manager's capacity as employee; a manager is both a manager and an employee. The plaintiff also argues that an employee handbook need not have an attestation clause to be binding. Finally, Hawley contends that the parol evidence rule is not applicable because he is not attempting to introduce *oral* evidence to *vary* the terms of a written agreement. Here, the Manual and memorandum are *written* documents which *are themselves* the writing establishing certain terms and conditions.

The first threshold inquiry that the Court must undertake is to determine what kind of prima facie employment agreement the parties entered. The plaintiff contends that the four documents "govern" the terms of the "employment agreement." To say these documents "govern" the terms and conditions of employment does not make it clear whether the employment agreement consists solely of these four documents which together are a written employment agreement[2] or whether an oral agreement established the prima facie employment relationship, the terms and conditions of which are the subject of the four documents. In other words, the Court is uncertain whether the plaintiff claims that the parties entered a written employment agreement or an oral one.

The plaintiff contends that the Dresser Industrial Relations Manual and the Ytterberg memorandum govern certain conditions of termination and are the only statement of such policies. Further, he states that such policies and the handbook provide for binding obligations under *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 104, 483 N.E.2d 150, 154 (1985). *Mers* held that employee handbooks, company policy, and oral representations may give rise to implied or express contractual provisions that alter the terms of an *oral* at-will employment relationship. *Id.*[3] If the parties had entered a prima facie employment relationship by *written* agreement, *Mers* would not apply. *See Uebelacker v. Cincom Sys., Inc.*, 48 Ohio App.3d 268, 272, 549 N.E.2d 1210 (1988). Given that Hawley relies on *Mers*, the Court presumes that Hawley is

---

472 N.E.2d at 773. Dresser and Korb, in essence, are arguing that the four documents are "subsidiary" contracts, not an "employment contract" which establishes the prima facie employment relationship.

2. The Court may construe multiple documents together if they concern the same transaction. *Center Ridge Ganley, Inc. v. Stinn,* 31 Ohio St.3d 310, 314, 511 N.E.2d 106, 109 (1987).

3. Handbooks, company policy, and oral representations as well as the character of the employment, custom, and the course of dealing between the parties are "facts and circumstances" surrounding an oral employment-at-will agreement which the Court may consider in interpreting the agreement's terms concerning discharge. *Id.* at 100, 103–04, 483 N.E.2d at 151–52, 154 (paragraph two of the syllabus).

arguing that the parties entered an oral employment agreement, the exact terms and conditions of which were governed by the four documents. That is, the oral agreement established the prima facie employment relationship and the four documents constitute subsidiary contractual arrangements which add to or modify the original oral agreement.

A reading of the documents in question confirms this presumption. They do not in and of themselves constitute a contract establishing a prima facie employment relationship. They contain no promises by Hawley to provide services and no promise by Dresser, as consideration for Hawley's, to provide compensation. Although these two documents govern compensation, the documents contain no obligation to pay *as consideration for Hawley's promise to perform.*

This inquiry aids the determination of the second threshold issue, whether the parol evidence rule bars the plaintiff's introduction of the Manual and the Ytterberg memorandum to vary or aid in the interpretation of the employment agreement. Again, the defendants claim that Court cannot consider the Manual and Ytterberg memorandum in interpreting the employment agreement since they vary the terms of the written Amended Officer Compensation Program.

The plaintiff replies that the parol evidence rule applies only to oral statements which the proponent wishes to use to vary the terms of a written agreement, but does not apply to written documents which are themselves the only statement of such terms. "Parol" means "oral" and the parol evidence rule therefore excludes consideration of only oral agreements and negotiations, not written documents.

■ The Court disagrees with the positions of both parties. On one hand, the plaintiff's argument for avoiding the parol evidence rule is unpersuasive. The plaintiff contends that the parol evidence applies only to oral evidence which the proponent presents in an effort to vary the terms of an integrated writing. Although "parol" may have the narrow definition of "oral," the "parol evidence rule" is not limited to oral evidence. Pursuant to the parol evidence rule, the Court must not consider prior or contemporaneous oral and written understandings or negotiations to vary the terms of an integrated written contract.[4] The rule bars consideration of both oral and written "extrinsic" evidence,[5] and the rule could therefore apply to written documents such as the four presented by Hawley.

■ On the other hand, the defendants' rationale for applying the rule is incorrect. First, the parol evidence rule applies only to extrinsic evidence used to vary the terms of an integrated *written* agreement. *See, e.g., Charles A. Burton, Inc. v. Durkee,* 158 Ohio St. 313, 313, 109 N.E.2d 265, 265 (1952) (paragraph two of the syllabus). In this case, the plaintiff apparently relies on an oral prima facie agreement, on which the writings elaborate. Thus, there was no integrated written agreement which oral or written understandings or agreements could have modified.

■ Second, the parol evidence rule applies only to evidence of *prior or contemporaneous* written or oral understandings or negotiations. That is, the Court may not consider evidence of understandings reached and negotiations conducted before or contemporaneously with an integrated written contract, but it may consider written and oral agreements reached after the written contract. Subse-

---

4. Professor Williston describes the parol evidence rule as requiring "the exclusion of extrinsic evidence, *oral or written,* where the parties have reduced their agreement to an integrated writing." 4 S. Williston, *A Treatise on the Law of Contracts* § 631, at 949 (W. Jaeger 3d ed. 1961) (emphasis added). In a section entitled "The Parol Evidence Rule May Exclude Written as Well as Oral Agreements," Williston adds, "It

will be of no consequence whether such outside matter is oral or written." *Id.* § 646, at 1144.

5. For example, in *Center Ridge Ganley, Inc. v. Stinn,* 31 Ohio St.3d 310, 314, 511 N.E.2d 106, 109 (1987) (per curiam), the court called an unexecuted written agreement "parol evidence."

quent written and oral agreements can modify an integrated written contract. *Rockwell Int'l Corp. v. Regional Emergency Servs., Inc.,* 688 F.2d 29, 32 (6th Cir.1982); *cf. Morrison v. Devore Trucking, Inc.,* 68 Ohio App.2d 140, 140, 143, 428 N.E.2d 438, 440, 441 (1980) (paragraph three of the syllabus; under Ohio Rev.Code Ann. § 1302.12 (Anderson 1979)). In this case, the plaintiff alleges that the four documents which define the terms and conditions of employment became binding by mutual assent after Hawley had become an employee, that is, after the parties had entered an employment agreement establishing the prima facie employment relationship.

■ Thus, the defendant's arguments fail to show that the parol evidence rule applies. The Court, then, holds that the parol evidence rule does not bar consideration of the Dresser Industrial Relations Manual and the Ytterberg memorandum in interpreting the employment agreement. The plaintiff is not presenting them in an effort to vary the terms of an integrated *written* agreement, but instead hopes that they will establish terms of an agreement which was originally an *oral* contract. Moreover, the parties allegedly agreed upon these writings after the original oral contract; the parol evidence rule excludes only evidence of prior or contemporaneous agreements or negotiations.

Having disposed of the two threshold issues, the Court can now consider the main issue. The Court must determine which written documents clarify the terms and conditions of the oral at-will employment relationship between Hawley and Dresser. The Court finds that the parties do not dispute that the Letter Agreement and the Amended Officer Compensation Program are binding on Dresser. They establish certain terms and conditions concerning compensation. The parties do, however, dispute the status of the Dresser Industrial Relations Manual and the Ytterberg memorandum.

■ The Court notes that in the absence of "mutual assent to create a contract," the Court cannot conclude that provisions in documents such as the Manual are binding on the employer. Instead, such an absence of mutual assent indicates that the Manual "is simply a unilateral statement of rules and policies that create no obligation or rights." *Uebelacker v. Cincom Sys., Inc.,* 48 Ohio App.3d 268, 268, 272, 549 N.E.2d 1210 (1988) (paragraph one of the syllabus); *Tohline v. Central Trust Co.,* 48 Ohio App.3d 280, 280, 282, 549 N.E.2d 1223 (1988) (paragraph one of the syllabus), *appeal dismissed,* 41 Ohio St.3d 703, 534 N.E.2d 1202 (1989). Accordingly, if the Manual had a disclaimer which stated that its provisions do not create binding contractual obligations, then the handbook would constitute a mere statement of rules and policies. *Uebelacker,* 48 Ohio App. at 268, 272, 549 N.E.2d 1210; *Tohline,* 48 Ohio App. at 282–83, 549 N.E.2d 1223.

■ In this case, the defendant cannot point to a disclaimer of contractual intent in the Manual. Thus, the Court cannot conclude that it is undisputable that the parties *did not* intend the Manual to be binding. The plaintiff, however, cannot conclusively show language suggesting that the parties *did* intend for the Manual to be binding. Hawley points out no passage in the Manual or memorandum showing an intent to be bound and he fails to show a passage in the Letter Agreement or Amended Officer Compensation Program which incorporates the Manual or memorandum by reference.[6]

A genuine issue also exists as to whether the Manual induced a bargained-for detriment, namely continued employment. The Court cannot resolve the issue of when Hawley received the Manual and to whom Dresser distributed it.[7] If Hawley received

---

**6.** The Court also notes that these documents had no attestation clause. Such an omission militates against a finding of contractual intent. The Court, however, does not hold that an attestation clause is a necessary condition of a finding of contractual intent.

**7.** The plaintiff need not show that he is intimately familiar with the nuances of the Manual in order to use the Manual as an aid in interpreting the terms of the employment agreement. The plaintiff may utilize the Manual if he were aware of the Manual, its binding nature, and the

the handbook in his capacity as manager and not as employee, and if the guidelines were not distributed to employees in general, they would not be binding on Dresser. *Cf. Anderson v. Hewlett-Packard Corp.*, 694 F.Supp. 1294, 1296 (N.D.Ohio 1988) (under Illinois law). Giving the handbook to a manager would not induce a bargained-for detriment, but would, instead, be a mere unilateral statement of rules and policies. The determination of this issue must await trial. Accordingly, a genuine issue of material fact remains as to whether the parties intended the Manual to be binding. Therefore, summary judgment is inappropriate on the issue of whether the Manual in part governs the terms and conditions of Hawley's employment.

The record also shows a genuine issue as to whether the Ytterberg memorandum governed the terms and conditions of Hawley's employment. The parties dispute whether Hawley saw the memorandum during his employment. If he did not see the memorandum during his employment, it could not have led to an intent to contract and could not have induced the bargained-for detriment of continued employment. Also, it is not clear whether the memorandum is a unilateral statement of policy or a clarification of the Manual which Dresser intended as an inducement for continued employment under the benefits provided in the memorandum. Therefore, summary judgment is not warranted on the issue of whether the Ytterberg memorandum in part governs the terms and conditions of Hawley's employment.

The Court concludes that the Letter Agreement and the Amended Officer Compensation Program governed the terms and conditions of Hawley's employment with Dresser, a relationship which the Court presumes was the original result of an oral employment agreement. To the extent the plaintiff seeks a declaration to this effect, the plaintiff's motion for partial summary judgment is meritorious. The Court, however, concludes that genuine issues exist as to whether the Dresser Industrial Relations Manual and the Ytterberg memorandum gist of the provisions in the Manual which the

governed the terms and conditions of Hawley's employment. Insofar as the plaintiff seeks a declaration that these documents did govern the terms and conditions of his employment, the motion is without merit.

## II. THE TERMS OF EMPLOYMENT

The next segment of the plaintiff's motion seeks a declaration that the employment agreement, as defined in the previous section, contains provisions which protected Hawley from termination without just cause. The plaintiff contends that two rules of construction are helpful. First, Dresser's predecessor drafted these documents; thus, the Court should construe their provisions most strongly against Dresser. Second, the Court should construe the agreement while keeping in mind that the parties must deal with each other under the standards of good faith and fair dealing.

Hawley contends that the Dresser Industrial Relations Manual and the Ytterberg memorandum make it clear that reassignment of employees is given priority over termination and that in any reduction in work force Dresser should make a concerted effort to relocate employees and if the company retained only certain employees, senior employees, such as Hawley, should be given a preference. Moreover, all four documents contain no provision suggesting that the employment is at-will.

Given that the Court found genuine issues as to whether the Dresser Industrial Relations Manual and the Ytterberg memorandum governed the terms and conditions of employment, genuine issues exist as to whether provisions in these two documents preclude termination without just cause. Therefore, insofar as this segment of the plaintiff's motion seeks a declaration that the Manual and Ytterberg memorandum contain provisions barring termination without just cause, the motion is meritless.

Nevertheless, the Court will consider whether the employment agreement, as elaborated by the Letter Agreement and the Amended Officer Compensation Pro- plaintiff now wishes to assert.

gram barred discharge without just cause. The plaintiff's sole argument regarding these two documents is that they contain no provisions which state that Hawley's employment is at-will. This argument is, however, insufficient to meet the plaintiff's burden of showing an absence of a genuine issue as to the duration of the employment.

■ First, in the absence of a specific term of employment, contracts of employment are considered at-will. *See, e.g., Henkel v. Educational Research Council,* 45 Ohio St.2d 249, 249, 251, 344 N.E.2d 118, 118, 119, (1976) (syllabus). Therefore, the absence of a term which expressly states that the employment *is* at-will proves nothing. To show that the Letter Agreement and the Amended Officer Compensation Program did not entail at-will employment, the plaintiff must point to language in the agreements that expressly states that the employment *is not* at-will, and that it would instead last for a certain duration.

Second, the defendants contend that language in the Amended Officer Compensation Program makes it clear that Hawley was an at-will employee. Dresser quotes paragraph 65 of the Program, entitled "Termination of Employment," as stating that termination can take place "for any reason in any year." Also, it quotes paragraph 76 of the Program as saying that the Company has the power to "change the organizational assignment, grade, position, salary or terminate the employment of any Officer at any time."

■ The Court notes that paragraph 76 indicates that the Amended Officer Compensation Program, made binding by virtue of the Letter Agreement, did not protect Hawley against termination without just cause. Given the absence of a specific duration of the contract and given paragraph 76, then, the Court concludes that the plaintiff failed to demonstrate that the Amended Officer Compensation Program and the Letter Agreement barred Dresser from discharging Hawley without just cause and that no genuine issue on this point remains.

In conclusion, the plaintiff failed to show that the employment agreement, as elaborated by the four written documents cited by Hawley, bars the termination of Hawley without just cause. The Letter Agreement and Amended Officer Compensation Program do not provide for a duration of employment and may even make it clear that Hawley's employment was at-will. Moreover, since a genuine issue exists as to whether the Dresser Industrial Relations Manual and Ytterberg memorandum govern the terms and conditions of Hawley's employment, a genuine issue remains as to whether provisions in these documents provide a binding contractual obligation for Dresser to refrain from terminating Hawley without just cause. Accordingly, the second segment of Hawley's motion for partial summary judgment is meritless.

### III. WRONGFUL TERMINATION

■ The third segment of the plaintiff's motion for partial summary judgment seeks a declaration that Dresser violated Hawley's employment agreement by terminating him wrongfully. The plaintiff contends that his employment agreement, as governed by the Letter Agreement, the Amended Officer Compensation Program, the Dresser Industrial Relations Manual, and the memorandum from Ralph Ytterberg provide that Dresser cannot terminate Hawley without just cause, as he argues in the second segment of his motion. He contends that Dresser did indeed terminate him without just cause. Therefore, he is entitled to a declaration that Dresser breached its employment agreement with Hawley.

Given that the plaintiff failed to show an absence of genuine issue regarding whether the four documents bar termination for just cause, a genuine issue remains as to whether Dresser violated such terms in the written documents. Accordingly, the plaintiff is not entitled to a declaration that Dresser violated the employment agreement with Hawley and this segment of the plaintiff's motion is without merit.

WHEREUPON, upon consideration and being duly advised, the Court finds the plaintiff's motion for partial summary

judgment to be partially meritorious. To the extent that the plaintiff seeks a declaration that the Letter Agreement dated December 31, 1966 and the Amended Officer Compensation Program governed the terms and conditions of Hawley's employment, the plaintiff's motion for partial summary judgment is meritorious, and it is, therefore, GRANTED. In all other respects, the motion is meritless and it is, therefore, DENIED.

IT IS SO ORDERED.