53 F.3d 332
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Claude Michael ROLLINS, Plaintiff-Appellant,
v.
MIDLAND STEEL PRODUCTS COMPANY, Defendant-Appellee.
 No. 94-3138.
 United States Court of Appeals, Sixth Circuit.
 April 26, 1995.
 
 Before: JONES and MILBURN, Circuit Judges, and COHN, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff Claude Michael Rollins appeals the district court's summary judgment for Defendant Midland Steel Products Company on his claims arising from the company's termination of his employment. Specifically, he appeals with respect to his claims under Ohio law of breach of express and implied employment contract and promissory estoppel. Because there are disputed issues of material fact underlying Rollins' breach of contract claim, we reverse the district court's summary judgment on this issue and remand for further proceedings. We affirm the decision of the district court on Rollins' promissory estoppel claim.
 
 I.
 
 2
 In September 1992, Plaintiff-Appellant Rollins brought this suit against his former employer, Midland Steel Products Company ("Midland"), alleging six claims arising from Midland's termination of his employment. Two causes were dismissed.
 
 
 3
 In August 1993, Midland moved for summary judgment on Rollins' remaining claims of race discrimination, breach of contract, and promissory estoppel; Rollins moved for summary judgment on his contractual claims. On December 27, 1993, the district court granted summary judgment for Midland. Rollins appeals this judgment with respect to the breach of contract and promissory estoppel claims.
 
 
 4
 Midland produces frames for medium size trucks and buses for automobile manufacturers. Rollins worked at Midland's plant in Cleveland, Ohio as a press operator and a helper. When Rollins initially commenced his employment with Midland in March 1989, he was a member of the United Auto Workers union ("UAW"), Local 486. In June 1989, however, UAW went on strike; Rollins resigned from UAW and continued working at the plant. During the strike, at-will replacement workers were hired so that the plant could continue operation. During this time, Midland instituted Thursday business meetings with its workers, during which times certain company administrators generally assured the workers that they would not be out of a job when the UAW strike ended. Rollins claims that in reliance on these promises, he stopped looking for other employment, bought a house, and enrolled his daughter in private school.
 
 
 5
 As to the events and final "incident" leading to Rollins termination, many facts are in dispute. Midland claims that Rollins had a history of misconduct; Rollins denies this. The "incident" over which Rollins was ultimately fired was the mysterious bottoming out of the 6900 press on the night of Friday, July 26, 1991, when Rollins and four other men were operating the press. One individual, Carl Ramsey, claimed that Rollins pulled the safety plug from the press, causing the press to fail. Rollins denies this, and another worker, crane operator Mark Campbell, has stated that Rollins did no such thing.
 
 
 6
 The next day, Rollins began a scheduled medical leave for knee surgery. While Rollins was on his extended medical leave, a company investigation, led by Training and Safety Administrator Richard Evans, determined that Rollins should be fired. Rollins was fired on October 15, 1991, the day after returning to work after his medical leave.
 
 
 7
 In fall 1990, Midland in conjunction with its workers began developing a policy for addressing employee grievances. The general impetus behind establishing such a policy was to provide a process which assured workers that they were being treated fairly. The Peer Review Committee policy ("PRC policy") was implemented, and written information on the policy was distributed to employees, while Rollins was on sick leave. Rollins did not receive written material on the PRC policy until after he was terminated. The PRC policy, as written, states that its purpose is "to afford the hourly employees a Dispute-Resolution Process in which their individual grievances and/or inquiries can be formally addressed," and the process "applies to all regular, full-time employees, with the exception of the staff and probationary employees." J.A. at 272. "The complainant may appeal application of Company policy, employee treatment, pay issues, or termination. Issues must be appealed in a timely manner, usually within two (2) weeks of the occurrence of facts becoming known to the employee." Id. Termination cases are to be "forwarded directly" to the Peer Review Committee. Id. Finally, "[t]he decision of the Review Committee is final and binding on all parties." J.A. at 273.
 
 
 8
 After Evans and Personnel Administrator Tim Bonness informed Rollins that he was fired, Rollins asked about the PRC policy. Rollins explains that since he had been on medical leave for a while, he wanted to see the policy before he decided whether to pursue a grievance. Rollins claims that Evans and Bonness refused his request. Midland claims that Rollins stated that he did not want to pursue the Peer Review process because "he knew his co-workers disliked him and would all vote against him." Midland further claims that Evans told Rollins he would give him three days to consider using the process, and that when Rollins did not request the process until sometime after those three days had passed, his "belated" request was denied. The PRC policy as written does not require that grievances be pursued within three days.
 
 II.
 
 9
 Rollins argues that the district court erred in granting summary judgment on his breach of contract and promissory estoppel claims. "We review a district court's grant of summary judgment de novo.... [I]n a motion for summary judgment, 'credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.' " Russo v. City of Cincinnati, 953 F.2d 1036, 1041-42 (6th Cir.1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and citing Vollrath v. Georgia-Pacific Corp., 899 F.2d 533, 534 (6th Cir.), cert. denied, 498 U.S. 940 (1990)). Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Kraus v. Sobel Corrugated Containers, Inc., 915 F.2d 227, 229 (6th Cir.1990).
 
 A.
 
 10
 On his breach of contract claims, Rollins argues that his employment relationship with Midland was modified by the institution of the PRC policy, and that by not allowing him to take his termination to the PRC, Midland breached the implied employment contract created by the PRC. Midland argues that there was no breach of contract because there was no employment contract based on the PRC policy, primarily because there was no "meeting of the minds" to establish such a contract. Midland further argues that the PRC policy provides no stated terms of employment; nor is there any consideration by Rollins to support the contract.
 
 
 11
 It is well-established that Ohio recognizes a presumption of at-will employment. Mers v. Dispatch Printing Co., 483 N.E.2d 150, 153 (Ohio 1985); see Sowards v. Norbar, Inc., 605 N.E.2d 468, 471 (Ohio Ct.App.1992); Biskupich v. Westbay Manor Nursing Home, 515 N.E.2d 632, 633 (Ohio Ct.App.1986). Ohio courts have also established that employee handbooks or manuals or other written company policy can alter the terms of discharge. See, e.g., Bartlett v. Daniel Drake Memorial Hospital, 599 N.E.2d 403, 406 (Ohio Ct.App.1991); Brandenburger v. Hilti, Inc., 556 N.E.2d 212, 216 (Ohio Ct.App.1989); Biskupich, 515 N.E.2d at 634. Nevertheless, Ohio courts have made clear that unless there is a "meeting of the minds" with respect to the terms of such materials, they do not alter the nature of the at-will employment, and are then merely unilateral statements of company policy. See, e.g., Bartlett, 599 N.E.2d at 406; Brandenburger, 556 N.E.2d at 216-17; Uebelacker v. Cincom Sys., Inc., 549 N.E.2d 1210, 1216 (Ohio Ct.App.1988).
 
 
 12
 After careful consideration, we find that the facts of this case preclude a determination of the mutual intent between the parties with respect to the PRC policy as a matter of law. See Hawley v. Dresser Indus., Inc., 738 F.Supp. 243, 249 (S.D.Ohio 1990); cf. Sowards, 605 N.E.2d at 472. Here, neither party has presented any evidence that the policy contained either a disclaimer, see Uebelacker, 549 N.E.2d at 1216-17, Kiel v. Circuit Design Tech., Inc., 562 N.E.2d 517, 520-21 (Ohio Ct.App.1988), or an attestation clause, see Brandenburger, 556 N.E.2d at 217, Cohen & Co. v. Messina, 492 N.E.2d 867, 870 (Ohio Ct.App.1985). Rollins points to "final and binding" language of the policy to suggest that Midland intended to be bound. Midland points to the fact that the PRC policy was not put into effect until Rollins was on medical leave and to the fact that Rollins did not obtain a copy of the policy until after he was discharged as precluding an intention on Rollins' part to be bound by the terms of the policy prior to his discharge. Rollins disputes this, claiming that he knew of the likely existence of the policy prior to his discharge. Midland says Evans told Rollins he had three days to decide whether to use the policy. Rollins disputes this.
 
 
 13
 An implied contract may be proved "by showing that the circumstances surrounding the parties' transactions make it reasonably certain that an agreement was intended." Lucas v. Costantini, 469 N.E.2d 927, 929 (Ohio Ct.App.1983) (citing Columbus, Hocking Valley & Toledo Ry. v. Gaffney, 61 N.E. 152 (Ohio 1901)). Furthermore, except in the clearest cases, whether a contract was intended is a question for the fact-finder to resolve. Arnold Palmer Golf Co. v. Fuqua Indus., Inc., 541 F.2d 584 (6th Cir.1976). We find that whether there was mutual intent to be bound by the PRC policy turns on disputed issues of material fact that preclude summary judgment on this issue.
 
 
 14
 Midland further argues that Rollins' breach of contract claim must fail because the PRC policy does not contain a stated term of employment, and thus does not defeat the at-will nature of Rollins' employment. We disagree. Ohio courts have not held that a policy must contain stated terms of employment in order to validly alter terms of discharge.
 
 
 15
 Midland further argues that Rollins has provided no consideration in support of the new contract allegedly created by the PRC policy because Rollins did not continue to work after the policy was implemented and Rollins did not forego other employment opportunities based on any reliance on the policy. Rollins responds that he did continue to work after the policy was implemented, and that his continued employment is sufficient consideration to support an implied employment contract. See Sowards, 605 N.E.2d at 472. After full consideration, we conclude that the district court inappropriately determined that Rollins' continued employment did not constitute consideration as a matter of law.[1]
 
 B.
 
 16
 Rollins next argues that the district court erred in granting summary judgment on his promissory estoppel claim. Promissory estoppel can be used to limit a contract which is otherwise terminable at will. Mers, 483 N.E.2d at 154. To establish promissory estoppel Rollins must show that Midland made representations to him, upon which it was reasonable for him to rely, and upon which he actually relied to his detriment. Id. The Ohio Supreme Court has further explained that "a demonstration of detrimental reliance on specific promises of job security can create an exception to the employment-at-will doctrine." Helmick v. Cincinnati Word Processing, Inc., 543 N.E.2d 1212, 1217 (Ohio 1989); see also Cohen & Co., 492 N.E.2d at 872.
 
 
 17
 We find that the district court appropriately granted summary judgment on this issue. Rollins could not have reasonably relied on the general comments made to the workers as promises of permanent employment, especially since his "at-will" termination was not related to the strike issues at which these comments were aimed. Nor could the PRC policy support a claim that Rollins could only be discharged for "just cause," because the policy contains no such language. Nor does the PRC policy provide a "specific promise of continued employment." Wing v. Anchor Media, Ltd., 570 N.E.2d 1095, 1098-99 (Ohio 1991); Helmick, 543 N.E.2d at 1217. Furthermore, Rollins has presented no evidence that he relied on the existence of the PRC policy to his detriment. Even if ceasing a job search based on a promise of job security constitutes detrimental reliance, Rollins only claims that he stopped searching for other employment based on the Thursday meeting representations. Rollins has not made out, and cannot make out, a claim of promissory estoppel.
 
 III.
 
 18
 For the reasons stated above, we affirm the district court's summary judgment on Rollins' promissory estoppel claim. We reverse the district court's summary judgment on Rollins' breach of contract claim, and remand for further proceedings.
 
 
 
 *
 The Honorable Avern Cohn, United States District Court Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Rollins also argues that "the benefit to Midland of retaining a skilled worker during a strike, which bettered its bargaining position with the striking UAW" also provided consideration for the implied contract. Because our review of the record does not reveal that this argument was presented below, we decline to consider it. Rollins is free to make this argument in further proceedings in the district court